IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GEVO, INC.,                                )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 )    Civ. No. 12-1724-SLR
                                           )
BUTAMAX(TM) ADVANCED                       )
BIOFUELS LLC, E.I. DUPONT                  )
DE NEMOURS & COMPANY;                      )
BP P.L.C. d/b/a BP CORPORATION             )
NORTH AMERICA INC.; and BP                 )
BIOFUELS NORTH AMERICA LLC,                )
                                           )
                Defendants.                )

---

Thomas C. Grimm, Esquire, Stephen J. Kraftschik, Esquire, and Jeremy A. Tigan, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware.  Counsel for Plaintiff.  Of Counsel:  James P. Brogan, Esquire, Carolyn V. Juarez, Esquire, Daniel Knauss, Esquire, Stephen C. Neal, Esquire, Michelle S. Rhyu, Esquire, and Tryn T. Stimart, Esquire of Cooley LLP.

John G. Day, Esquire, Lauren E. Maguire, Esquire, and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware.  Counsel for Defendants.  Of Counsel:  Gilbert A. Green, Esquire, and William C. Slusser, Esquire of Fulbright & Jaworski LLP.

---

**MEMORANDUM OPINION**

Dated: July 8 , 2013
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On July 30, 2012, Gevo, Inc. ("Gevo") filed a complaint against defendants

Butamax (TM) Advanced Biofuels LLC ("Butamax"), E.I. DuPont de Nemours and Co.

("DuPont"), BP p.l.c. ("BP"), BP Corporation North America Inc. ("BP Corp"), and BP

Biofuels North America LLC ("BP Biofuels") (collectively, "defendants"), alleging that

each defendant directly and/or indirectly infringed U.S. Patent No. 8,232,089 ("the '089

patent"), and U.S. Patent Publication No. US 2011/0076733 ("the '733 publication")

which issued as the '089 patent on July 31, 2012. (D.I. 1)  Presently before the court is

BP's motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

(D.I. 71)  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

1338(a).

## II. BACKGROUND

### A. Parties

Gevo is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business in Englewood, Colorado.  (D.I. 1 at ¶ 1)

Butamax is a limited liability corporation organized and existing under the laws of

the State of Delaware, with its principal place of business in Wilmington, Delaware.  (*Id.*

at ¶ 2)  Butamax is jointly owned by DuPont and BP Biofuels.  (*Id.*)

DuPont is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business in Wilmington, Delaware.  (*Id.* at ¶ 3)

BP is a public limited corporation incorporated under the laws of England and

Wales, and is doing business in the United States through various subsidiaries,

including BP Corp.  BP maintains its North American headquarters at 501 Westlake Park Blvd., Houston, Texas.  (*Id.* at ¶¶ 5, 6)

BP Corp is an Indiana corporation with a principal place of business at 501 Westlake Park Blvd., Houston, Texas.  (*Id.* at ¶¶ 5, 7)  BP Corp is a subsidiary of BP. (*Id.* at ¶ 5)

BP Biofuels is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 501 Westlake Park Blvd., Houston, Texas.  (*Id.* at ¶ 9)  BP Biofuels is a subsidiary of BP.  (*Id.* at ¶ 2)

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)).  Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11.  Second, a court should determine whether the remaining well-pled facts sufficiently

2

show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Factual Allegations

The complaint contains the following allegations with respect to BP:

> 2. Butamax is a limited liability corporation organized and existing under the laws of the state of Delaware, with its

3

principal place of business in Wilmington, Delaware. Butamax is jointly owned by DuPont and BP Biofuels North America, an indirect subsidiary of BP.

16. On information and belief, BP, through its subsidiaries BP Corp North America and BP Biofuels North America, directs Butamax to engage in research and development activities related to the subject matter of this action and controls the manner in which these activities are performed.

28. On information and belief, Butamax, DuPont, BP, BP Corp North America, and/or BP Biofuels North America had knowledge of the '733 Publication prior to the issuance of the '089 Patent.

29. The '089 Patent and the '733 Publication disclose and claim, among other things, recombinant yeast microorganisms comprising a metabolically engineered isobutanol pathway containing an exogenously encoded dihydroxy acid dehydratase ("DHAD") with at least 90% identity to the motif of disclosed SEQ ID NO: 27, and engineered to inactivate one or more endogenous pyruvate decarboxylase ("PDC") genes and a method for producing the microorganism.

30. On information and belief, Butamax, DuPont, BP, BP Corp North America, and/or BP Biofuels North America disclose recombinant yeast strains expressing a metabolically engineered isobutanol pathway with DHAD with at least 90% identity to the motif of SEQ ID NO: 27, and engineered to inactivate one or more endogenous PDC genes . . . .

34. On information and belief, BP has directly and/or indirectly infringed, either literally or under the doctrine of equivalents, one or more of the claims of the '089 Patent by performing and/or directing others to perform the methods described in paragraph 29 without Gevo's authorization . . . .

42. On information and belief, pursuant to 35 U.S.C. § 154(d), BP has directly and/or indirectly infringed, either literally or under the doctrine of equivalents, Gevo's provisional patent rights in one or more of the claims of the '089 Patent by performing and/or directing others to perform

4

> the methods described in paragraph 29 without Gevo's
> authorization . . . .

(D.I. 1)

In essense, Gevo has asserted the following facts in its complaint: (1) BP is the

parent company of BP Biofuels and BP Corp; (2) Butamax is a joint venture of Dupont

and BP Biofuels; and (3) one of the named defendants has disclosed a recombinant

yeast strain that is covered by the '089 patent. The remainder of Gevo's allegations are

conclusory statements.

## B. Direct Infringement

### 1. Standard

A cause of action for direct infringement arises under 35 U.S.C. § 271(a), which

provides that "whoever without authority makes, uses, offers to sell, or sells any

patented invention . . . during the term of the patent therefor, infringes the patent." To

state a claim of direct infringement, "a patentee need only plead facts sufficient to place

the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel

Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (citing *Twombly*, 550 U.S. at 565 n.10).

The Federal Circuit in *McZeal* held that, for a direct infringement claim, Fed. R. Civ. P.

Form 18 meets the *Twombly* pleading standard. *See McZeal*, 501 F.3d at 1356–57.

That is, only the following is required: "(1) an allegation of jurisdiction; (2) a statement

that plaintiff owns the patent; (3) a statement that defendant has been infringing the

patent by 'making, selling, and using [the device] embodying the patent'; (4) a

statement that the plaintiff has given the defendant notice of its infringement; and (5) a

demand for an injunction and damages." *McZeal*, 501 F.3d at 1357; *see also*

5

*S.O.I.TEC Silicon on Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, 2009 WL 423989, at *2 (D. Del. Feb. 20, 2009).

### 2. Discussion

It is uncontested that Gevo has made an allegation of jurisdiction (D.I. 1 at ¶¶ 19–25), stated that it owns the patent (*id.* at ¶ 26), and made a demand for injunction and damages (*id.* at 11–13). BP argues that counts one and two of Gevo's complaint are deficient as they do not allege any "meaningful identification of specific acts" that constitute infringement within the United States. (D.I. 71 at 4)

The court starts from the premise that the issue of whether a parent "controls" subsidiaries ultimately involves a legal conclusion based on underlying facts. *See E. Indus., Inc. v. Traffic Controls, Inc.*, 142 F. Supp. 381, 384 (D. Del. 1956) ("[t]he determination of the question of whether one corporation is [controlled by] another is largely a question of fact and of degree."); *Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil Co.*, 456 F.Supp. 831, 840–41 (D.Del.1978) ("[w]hether an agency relationship exists between a parent corporation and its subsidiary is normally a question of fact"). In its complaint, Gevo has asserted no underlying facts[1] supporting its conclusory allegation of control; therefore, the court is not obligated to accept as true the proposition that BP controls the activities of its subsidiary defendants or the activities of any business ventures owned by the subsidiaries. Given the context of this litigation, where it is evident that Butamax is the business entity engaged in the

---

[1] It could be argued, of course, that Gevo is not privy to such facts without discovery. However, such indicia of control as overlapping boards or officers or consolidated financial statements generally are within the public domain and should have been related if available.

"research and development activities related to the subject matter of this action" (D.I. 1 at ¶¶ 15-18), Gevo's allegations do not sufficiently tie BP to the alleged act of infringement, that is, disclosing recombinant yeast strains that embody the patented invention.  To put the point another way, Gevo has not sufficiently pled any act of infringement that plausibly could be related to BP.

The court concludes as well that the allegations of infringement recited in count two as to Gevo's provisional patent rights (*id.* at ¶¶ 28, 42) are insufficient under the statutory requirement that an accused infringer have "actual notice of the published patent application." 35 U.S.C. § 154(b).  Gevo's equivocal assertion of "knowledge" - "on information and belief" - is not buttressed by any specific facts and is even further diluted by the use of "and/or" in the paragraph.  (*Id.* at ¶ 28)  In this regard, given Gevo's use of the word "or" in paragraph 28 and the lack of factual allegations, clearly it might not be BP at all who had knowledge of the '733 application prior to litigation.

The court concludes, therefore, that Gevo has not fulfilled its minimal requirements for pleading BP's direct infringement of either the '089 patent or the '733 application. *See McZeal*, 501 F.3d at 1357.

## C. Joint Infringement[2]

### 1. Standard

In circumstances where one party performs some of the steps of a patent claim, and another entity performs other of the claimed steps, a theory of joint infringement

---

[2] Although not specifically mentioned in the original complaint, as both parties address the issue of joint infringement in their briefings, the court will consider the issue.

7

may establish liability. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008); *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 695–96 (D. Del. 2011). Joint infringement exists only "if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction*, 532 F.3d at 1329 (citing *BMC Res. Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380–81 (Fed. Cir. 2007)); *see also Pragmatus AV, LLC v. TangoMe, Inc.*, 2013 WL 571798, at *13 (D. Del. Feb. 13, 2013) ("A plaintiff must plead facts sufficient to allow a reasonable inference that one party exercises the requisite 'direction or control,' such that performance of every step is attributable to the controlling party.") (quoting *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534 (D. Del. 2011)). This "control or direction" standard is "satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction*, 532 F.3d at 1330 (citation omitted).

### 2. Discussion

Although "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), Gevo alleges that BP "controls" its subsidiaries (D.I. 1 at ¶ 11), "direct[s]" Butamax through its subsidiaries and, therefore, "controls" Butamax's activities (D.I. 1 at ¶ 16).

As previously discussed, whether a parent company controls a subsidiary is a legal conclusion based on underlying facts. *See supra*, Part IV.B.2. Gevo has asserted

8

no underlying facts supporting its conclusory allegation that BP directs or controls Butamax, BP Biofuels, and/or BP Corp. Therefore, the court is not obligated to accept as true the proposition that BP controls the activities of its subsidiary defendants or the activities of any business ventures owned by the subsidiaries. Gevo's allegations are not sufficient to sustain a claim that BP directed or controlled Butamax. Therefore, Gevo has not sufficiently pled joint infringement.

### D. Indirect Infringement

#### 1. Induced Infringement

##### a. Standard

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To demonstrate inducement of infringement, the patentee must establish, first, that there has been direct infringement and, second, that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v. SEB S.A.*, —— U.S. ——, 131 S.Ct. 2060, 2068 (2011). "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part); *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (In order to survive a motion to dismiss, the inducement complaint must contain facts "plausibly showing that [indirect infringer] specifically intended [the direct infringers] to infringe [the patent-at-issue] and knew that the [direct infringer's] acts constituted infringement.")

9

### b. Discussion

Consistent with the above, where it is evident that Butamax is the business entity engaged in alleged direct infringement (D.I. 1 at ¶¶ 15-18), Gevo's allegations of control do not sufficiently tie BP to any infringing act, or show BP specifically intended Butamax to commit any infringing act.  Therefore, Gevo's allegations are insufficient to satisfy the pleading requirements of *Twombly* for a claim of induced infringement.

### 2. Contributory Infringement

### a. Standard

Under 35 U.S.C. § 271(c), a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a component of an infringing product "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  Therefore, § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which [its] component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

### b. Discussion

Gevo has not pled that BP sold, offered to sell, or imported a component of the infringing product into the United States.[3]  Nor has Gevo offered facts that would

---

[3] Gevo's complaint does not mention selling any product that infringes, and Gevo states that the infringing activities take place within the United States.  (D.I. 1; D.I. 72 at 7-8)  While Gevo has stated that BP disclosed the yeast strain, this is insufficient to meet the 35 U.S.C. § 271(c) requirement.

10

support such a claim.[4]  Therefore, the contributory infringement claims are properly

dismissed as to BP.

### 3. Willful Infringement

#### a. Standard

The Federal Circuit set forth a two-pronged standard for establishing willfulness

in *Seagate*, the first prong of which states:

> [To] establish willful infringement, a patentee must show by
> clear and convincing evidence that the infringer acted
> despite an objectively high likelihood that its actions
> constituted infringement of a valid patent. The state of mind
> of the accused infringer is not relevant to this objective
> inquiry.

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (2007) (internal citations

omitted).  The existence of this objective risk is "determined by the record developed in

the infringement proceeding." *Id.*  The objective prong is generally not met when the

accused infringer maintains a reasonable defense to infringement, even if the jury

ultimately reaches a verdict of infringement.  *See Spine Solutions, Inc. v. Medtronic

Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) (holding that objective

prong is generally not met "where an accused infringer relies on a reasonable defense

to a charge of infringement"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567

F.3d 1314, 1336 (Fed. Cir. 2009) (concluding that accused infringer presented a

substantial question of noninfringement which precluded a finding of objective

recklessness despite the jury's ultimate finding of infringement).

---

[4] No facts are provided in the complaint regarding this issue.  Gevo's reply brief
only reiterates the disclosure of the yeast strain, and that BP is directing and controlling
Butamax.  (D.I. 72 at 7-8)

11

If the objective prong is satisfied, the patentee must next establish that "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371. This subjective prong hinges on the fact finder's assessments of the credibility of witnesses. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 557 (D. Del. 2011). "The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).

**b. Discussion**

Gevo has not adequately stated a willful infringement claim for the '089 patent. Gevo's infringement claims for the '089 patent and '733 application allege that BP had knowledge of the '733 application (D.I. 1 at ¶ 28), and that BP's "ongoing infringement is willful and deliberate." (*Id.* at ¶ 51) Accepting these allegations as true, and drawing all reasonable inferences in favor of Gevo, Gevo has still failed to provide sufficient facts. Gevo first relies on *Walker Digital* to support its position; however, unlike the defendant's argument in that case, Gevo has not provided any evidence that BP was aware of the application pre-suit. Consistent with the guidance from the Federal Circuit in *Seagate*, because the only circumstance identified by plaintiff to substantiate its willfulness claims with respect to the '089 patent or the '733 application is the litigation itself, BP's motion to dismiss is granted as to those claims.

12

## V. CONCLUSION

For the foregoing reasons, the court grants BP's motion to dismiss.  (D.I. 71)  An appropriate order shall issue.